DEBORAH M. SMITH
Acting United States Attorney

LAWRENCE D. CARD
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: larry.card@usdoj.gov
AK Bar No. 8011068

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:06-cr-00016-RRB-JDR |
| | ) | |
| Plaintiff, | ) | **MOTION FOR ORDER** |
| | ) | **COMPELLING PRODUCTION** |
| v. | ) | **OF DNA SAMPLES** |
| | ) | |
| RONALD KEITH CHRISTIAN, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, and hereby moves this Court for an order compelling defendant, Ronald Keith Christian, to provide DNA samples under the supervision of law enforcement agents by means of a buccal swab.[1]

---

[1] Buccal swabs have become the predominant means of obtaining known DNA for comparison purposes. A "Q-Tip" is simply stuck into the subjects open mouth and in a non-invasive way rolled around in the mouth, then placed in a sample bag provided by the Alaska State Crime Lab.

The government needs the known DNA sample from Mr. Christian in order to submit the known sample to the State of Alaska crime laboratory to determine whether the defendant's DNA matches any usable DNA found on a monkey face mask found near the attempted robbery of the Denali Alaskan Federal Credit Union on January 30, 2006.

The evidence is that a person who had paint splattered blue jeans, a blue flannel jacket, gray tee shirt, and brown boots had attempted the robbery, and that the described clothes were like those Mr. Christian was wearing when he was arrested a short time after the attempted robbery. A citizen who was parked in the area of the robbery told investigators that he saw a man discard several items in the snow, and he subsequently identified Mr. Christian as the person who had discarded the items, which included a monkey face mask.

## SURVEY OF NON-TESTIMONIAL EVIDENCE

A DNA sample is non-testimonial in nature. As such, no Fifth Amendment protection applies. See *Shaffer v. Saffle*, 148 F.3d. 1180, 1181 (10th Cir. 1998) (providing a DNA sample pursuant to state statute to establish a DNA Offender Database did not violate Fourth or Fifth Amendment rights of a prisoner). Like non-testimonial handwriting exemplars, the Court may compel a defendant to provide law enforcement with DNA samples. See *Gilbert v. California*, 388 U.S.

263, 266-67, 87 S. Ct. 1951, 1953-54(1967) (handwriting is identifying physical characteristic that lies outside the Fifth Amendment's protection against compulsory self-incrimination); *United States v. Dionisio,* 410 U.S. 1, 5-6, 93 S.Ct. 764, 767(1973); see also *Holt v. United States*, 218 U.S. 245, 31 S. Ct. 2d. 1021 (1910) (defendant required to put on a piece of clothing); and *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1965) (required to give a blood sample)*; United States v. Wade*, 388 U.S. 218, 222, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149 (1967) (required to speak the bank robber's words); *United States v. Dionisio*, 410 U.S. 1, 5-7, 93 S.Ct. 764, 767-68, 35 L.Ed.2d 67 (1973) (required to furnish voice exemplars); *In re Doe*, 860 F.2d 40, 46-47 (2nd Cir. 1988) (required to provide fingerprints); *United States v. Hammond*, 419 F.2d 166, 168 (4th Cir. 1969) (required to wear a false goatee similar to that of the bank robber); *United States v. Roberts*, 481 F.2d 892 (5th Cir. 1973) (required to put on a stocking mask worn during a bank robbery); *United States v. Domina*, 784 F.2d 1361, 1371 (9th Cir. 1986) (required to don a mask similar to that worn by a robber); *United States v. Valenzuela*, 722 F.2d 1431, 1433 (9th Cir. 1983) (required to shave facial hair in order to be clean shaven like the bank robber); *United States v. Bay*, 762 F.2d 1314, 1315-1316 (9th Cir. 1985) (required to display tattoos for comparison with a description of the bank robber).

Requiring the defendant to provide a DNA buccal swab sample does not raise a Fourth Amendment issue. The Fourth Amendment's proper function is to prevent against unreasonable searches and seizures, not to constrain against all intrusions. Reasonable intrusions may be justified in light of diminished expectations of privacy, the circumstances under which the intrusion is made, or the nature of the intrusion itself. The question in this case is whether it is reasonable to require the defendant to submit to a quick cotton swab of his mouth while in jail awaiting trial for the purposes of determining whether his DNA can be matched to any DNA that may be replicated from the State Crime Lab from the monkey mask believed to have been worn by the robber on January 30, 2006.

Here, the Fourth Amendment analysis weighs in favor of allowing investigators to take such a DNA swab. First, there is no intrusion and is similar to submitting to fingerprinting. In this case it is not necessary to draw blood. See generally *United States v. Kincade*, 345 F.3d 1095 (9th Cir. August 18, 2004) (holding that law requiring certain federal offenders on parole, probation and supervised release to submit compulsory blood samples for DNA database did not violate Fourth Amendment). Rather, the DNA sample is taken in a matter of seconds in a non-invasive way by using a cotton swab. Second, a defendant's expectation of privacy is decreased when he is in jail after having been indicted on

a federal felony offense.  Third, there is a legitimate and reasonable law enforcement purpose to taking the DNA sample in this case, since the evidence obtained may be either inculpatory or exculpatory, and therefore available to the defendant in his trial or in any post-conviction proceedings in which he may claim that he was simply in the wrong place at the wrong time and such available evidence may have totally exonerated him.

The relevance of a DNA match cannot be seriously disputed.  As noted above, everyday "booking" procedures routinely require those accused of crimes to provide fingerprint identification, regardless of whether investigation of the crime involves fingerprint evidence.  See *Rise v. State of Oregon*, 59 F.3d 1556 (9th Cir. 1995);  See also,  *Smith v. United States*, 324 F.2d 879, 882 (D.C. Cir. 1963) (Burger, J.) ("it is elementary that a person in lawful custody may be required to submit to ... fingerprinting ... as part of the routine identification processes")*;  Napolitano v. United States*, 340 F.2d 313, 314 (1st Cir. 1965) ("Taking fingerprints [prior to bail] is universally standard procedure, and no violation of constitutional rights.").  Thus, in the fingerprinting context, there exists a constitutionally significant distinction between the gathering of fingerprints from free and associated persons to determine their guilt of an unsolved criminal offense

and the gathering of fingerprints for identification purposes from persons within the lawful custody of the government.

The same analysis must hold true in the context of a taking a cotton swab of known DNA from the mouth of a defendant charged with serious crimes.

Based upon the above authority, the government has moved for an order directing that Mr. Christian provide a DNA sample under the supervision of law enforcement agents. Defendant Christian's failure to obey such an order is punishable as a criminal contempt. *United States v. Hammond*, supra, 419 F.2d at 168.

RESPECTFULLY SUBMITTED this 31st day of March, 2006, at Anchorage, Alaska.

    DEBORAH M. SMITH
    Acting United States Attorney

    s/ Lawrence D. Card
    Assistant U.S. Attorney
    222 West 7th Ave., #9, Rm. 253
    Anchorage, AK 99513-7567
    Phone: (907) 271-5071
    Fax: (907) 271-1500
    E-mail: larry.card@usdoj.gov
    Alaska Bar No. 8011068

**CERTIFICATE OF SERVICE**
I hereby certify that on March 31, 2006,
a copy of the foregoing was served
electronically on:

Michael Dieni
Asst. Federal Public Defender

s/ Lawrence D. Card